UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROSS MACLIN #148084,

    Plaintiff,                                   Hon. Janet T. Neff

v.                                                   Case No. 1:18-cv-756

SCOTT HOLMES,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendant's Motion for Summary Judgment. (ECF No. 22). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendant's motion be **granted** and this matter **terminated**.

## BACKGROUND

The following allegations are contained in Plaintiff's complaint. (ECF No. 1). Several years ago, Plaintiff was diagnosed with "vertigo and suspected Mieners Disease"[1] for which he was prescribed Antivert. On October 19, 2017, Plaintiff asked Dr. Scott Holmes why his Antivert had been discontinued. Dr. Holmes told Plaintiff that he discontinued his medication because Plaintiff had previously filed "complaints and medical kites" against Holmes and others concerning his treatment. Plaintiff initiated this action on April 10, 2018, against Dr. Holmes alleging retaliation

---

[1] It appears that Plaintiff is referring to Meniere's disease, a disorder of the inner ear that can result in vertigo. *See* Meniere's disease, available at https://www.mayoclinic.org/diseases-conditions/menieres-disease/symptoms-causes/syc-20374910 (last visited on Apr. 15, 2019).

and denial of medical treatment. Plaintiff seeks $300,000 in damages. Defendant Holmes now moves for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-

moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54.  In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002).  Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).  The Sixth Circuit has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561.  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

**I.        Denial of Medical Treatment**

Plaintiff alleges that Defendant Holmes violated his Eighth Amendment rights by discontinuing his Antivert medication on or about October 19, 2017.  The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state,

but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).

The analysis by which a defendant's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. A "serious medical need," sufficient to implicate the Eighth Amendment, is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). If the objective test is met, the Court must then determine whether the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, the plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it." *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 829, 847).

To the extent, however, that Plaintiff simply disagrees with the treatment he received, or asserts that he received negligent care, Defendant is entitled to summary judgment. *See Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle*, 429 U.S. at 105-06) ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Brown v. Kashyap*, 2000 WL 1679462 at *1 (6th Cir., Nov. 1, 2000) (citing *Estelle*, 429 U.S. at 106) ("allegations of medical malpractice or negligent diagnosis and treatment" do not implicate the Eighth Amendment); *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010) (to prevail on an Eighth Amendment denial of medical treatment claim, "the inmate must show more than negligence or the misdiagnosis of an ailment"); *Robbins v. Black*, 351 Fed. Appx. 58, 62 (6th Cir., Nov. 3, 2009) ("mere negligence or malpractice is insufficient to establish an Eighth Amendment violation").

In support of his motion for summary judgment, Defendant Holmes has submitted an affidavit and copies of the relevant portions of Plaintiff's medical records. (ECF No. 22-3 at PageID.139-42; ECF No. 24). This evidence reveals the following.

On September 19, 2017, Plaintiff was transferred to the Carson City Correctional Facility where Defendant Holmes was employed. (ECF No. 22-3 at PageID.140). On September 28, 2017, Plaintiff was first examined by Defendant Holmes. (ECF No. 22-3 at PageID.140; ECF No. 24 at PageID.161-63). Plaintiff alleged that he had been suffering dizziness daily since 2014. (ECF No. 22-3 at PageID.140). Dr. Holmes noted that Plaintiff was presently prescribed Antivert.[2] (ECF No. 22-3 at PageID.140; ECF No. 24 at PageID.161). The results of a neurological examination

---

[2] Antivert is used to "prevent and treat nausea, vomiting, and dizziness caused by motion sickness" and "may also be used to reduce dizziness and loss of balance (vertigo) caused by inner ear problems." *See* Antivert, available at https://www.webmd.com/drugs/2/drug-5337/antivert-oral/details (last visited on Apr. 16, 2019). Antivert is also known by its generic equivalent Meclizine. *See* Meclizine, available at https://www.webmd.com/drugs/2/drug-4520/meclizine-oral/details (last visited on Apr. 16, 2019).

were unremarkable and Plaintiff exhibited no signs of dizziness or ambulatory impairment. (ECF No. 22-3 at PageID.140; ECF No. 24 at PageID.162). Dr. Holmes "questioned the appropriateness of [Plaintiff's] chronic use of Antivert," but nevertheless continued Plaintiff's Antivert prescription. (ECF No. 22-3 at PageID.140; ECF No. 24 at PageID.162). The doctor subsequently noted, however, that Antivert is a "when necessary" medication. (ECF No. 22-3 at PageID.140; ECF No. 24 at PageID.164).

Plaintiff was next examined by Dr. Holmes on October 19, 2017, by which time Plaintiff's Antivert prescription had expired. (ECF No. 22-3 at PageID.140; ECF No. 24 at PageID.173). Plaintiff reported that he was experiencing dizziness since his Antivert prescription lapsed. (ECF No. 22-3 at PageID.140; ECF No. 24 at PageID.173). An examination revealed that Plaintiff was able to walk, move, sit, and stand without difficulty or evidence of vertigo. (ECF No. 22-3 at PageID.140; ECF No. 24 at PageID.173). The doctor concluded that there existed "no evidence from this exam or recent clinical events to support the indefinite prescribing of Antivert." (ECF No. 22-3 at PageID.140; ECF No. 24 at PageID.173). Following this examination, Plaintiff repeatedly complained that his Antivert prescription had not been renewed. (ECF No. 24 at PageID.174-80).

Plaintiff was next examined by Dr. Holmes on December 4, 2017, by which time a different doctor had renewed Plaintiff's Antivert prescription. (ECF No. 22-3 at PageID.140-41; ECF No. 24 at PageID.181-82). Dr. Holmes did not discontinue or modify Plaintiff's Antivert prescription. (ECF No. 22-3 at PageID.140-41; ECF No. 24 at PageID.181-82). On January 29, 2018, Plaintiff was examined by Dr. Holmes. (ECF No. 22-3 at PageID.141; ECF No. 24 at PageID.183). The results of a physical examination revealed "normal gait, normal balance, intact

gross neuro[logical] and muscular coordination." (ECF No. 24 at PageID.183). Nevertheless, Dr. Holmes did not discontinue or modify Plaintiff's Antivert prescription. (ECF No. 22-3 at PageID.141; ECF No. 24 at PageID.183).

Plaintiff was again examined by Dr. Holmes on April 2, 2018, for a matter unrelated to his vertigo. (ECF No. 22-3 at PageID.141; ECF No. 24 at PageID.185-86). Plaintiff's Antivert prescription was still current and Dr. Holmes made no changes to Plaintiff's medication regimen. (ECF No. 22-3 at PageID.141; ECF No. 24 at PageID.185-86). On April 4, 2018, Plaintiff submitted requests to have his Antivert prescription "renewed before it expires." (ECF No. 22-3 at PageID.141; ECF No. 24 at PageID.187-88). On April 9, 2018, Dr. Holmes denied Plaintiff's request, noting that "multiple exams do not confirm an ongoing indefinite need for Antivert." (ECF No. 22-3 at PageID.141; ECF No. 24 at PageID.189). Plaintiff thereafter continued to report that he was experiencing dizziness and requesting that his Antivert prescription be renewed. (ECF No. 24 at PageID.190-94).

On April 28, 2018, Plaintiff requested that due to Dr. Holmes' "past retaliation and racist behavior," he be treated by a different physician. (ECF No. 24 at PageID.195). Plaintiff's request was denied. (ECF No. 24 at PageID.195). On May 7, 2018, Plaintiff's Antivert prescription was renewed by a different medical provider. (ECF No. 24 at PageID.201). Plaintiff was scheduled to meet with Dr. Holmes on June 4, 2018, but Plaintiff refused to be examined by Dr. Holmes. (ECF No. 22-3 at PageID.141; ECF No. 24 at PageID.202-03). On July 13, 2018, Plaintiff again refused to be examined by Dr. Holmes. (ECF No. 22-3 at PageID.141; ECF No. 24 at PageID.204-05). On July 20, 2018, Plaintiff clarified that he was not refusing medical treatment, but was instead only refusing treatment from Dr. Holmes. (ECF No. 22-3 at PageID.142; ECF No. 24 at PageID.206).

Dr. Holmes did not have any further involvement with Plaintiff's care.  (ECF No. 22-3 at PageID.142).

This evidence reveals that this claim is premised on nothing more than Plaintiff's disagreement with the manner in which Defendant exercised his medical judgment.  While Plaintiff obviously believes that he should be provided an indefinite prescription for Antivert, Dr. Holmes concluded, based on the results of his examinations, that such was not medically appropriate.  Even if the Court assumes that Plaintiff has the better argument on this point, Defendant is still entitled to relief because, as noted above, allegations of negligent treatment, misdiagnosis, or medical malpractice do not implicate the Eighth Amendment.  Plaintiff has submitted no evidence creating a genuine issue of material fact with respect to this claim.  Accordingly, as to Plaintiff's Eighth Amendment claim, the undersigned recommends that Defendant Holmes is entitled to summary judgment.

## II.     Retaliation

Plaintiff alleges that Defendant Holmes refused to prescribe him Antivert in retaliation for grievances and complaints Plaintiff asserted against Defendant and others.   The elements of a First Amendment retaliation claim are well known: (1) Plaintiff was engaged in constitutionally protected conduct, (2) Plaintiff suffered adverse action which would deter a person of "ordinary firmness" from continuing to engage in such protected conduct, and (3) there exists a causal connection between the protected conduct and the adverse action - in other words, the adverse action was motivated at least in part by Plaintiff's protected conduct.  *See Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

With respect to the first element, Plaintiff failed in his complaint to identify the protected conduct which he alleges motivated Defendant to retaliate against him. In response to the present motion, however, Plaintiff alleges that Defendant retaliated against him in response to two complaints Plaintiff allegedly sent to the warden. (ECF No. 28 at PageID.249). The first complaint was allegedly sent to the warden on September 27, 2017, alleging that Defendant refused to authorize Plaintiff to receive a hearing aid. (ECF No. 28-1 at PageID.299). The second complaint was allegedly sent to the warden on October 1, 2017, again alleging that Defendant refused to authorize Plaintiff to receive a hearing aid. (ECF No. 28-1 at PageID.301). These two complaints satisfy the protected conduct element. Likewise, the Court finds that denial of medication could deter a person of ordinary firmness from continuing to engage in protected conduct. Plaintiff's claim fails, however, at step three of the analysis.

With respect to causation, courts recognize that retaliation is easy to allege and "is often very difficult to prove with direct evidence." *King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012). Nonetheless, "bare allegations of malice" are insufficient to state a constitutional claim, as Plaintiff must instead establish "that his protected conduct was a motivating factor" behind the allegedly retaliatory action taken. *Thaddeus-X*, 175 F.3d at 399 (citations omitted). Conclusory allegations of retaliatory motive are insufficient, however. *See Skinner v. Bolden*, 89 Fed. Appx. 579, 579-80 (6th Cir., Mar. 12, 2004). Instead, Plaintiff must, at a minimum, allege a chronology of events from which retaliation can plausibly be inferred. *See Desmone v. Adams*, 1998 WL 702342 at *3 (6th Cir., Sep. 23, 1998); *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004).

As noted above, when Dr. Holmes first examined Plaintiff on September 28, 2017, Plaintiff was already taking Antivert via a prescription authorized by a different care provider. While

-9-

Dr. Holmes questioned Plaintiff's chronic use of Antivert, he did not discontinue Plaintiff's prescription. By the time Defendant next examined Plaintiff on October 19, 2017, Plaintiff's Antivert prescription had expired. A physical examination revealed that Plaintiff was able to walk, move, sit, and stand without difficulty or evidence of vertigo. Dr. Holmes concluded that there existed "no evidence from this exam or recent clinical events to support the indefinite prescribing of Antivert." By the time Dr. Holmes next examined Plaintiff on December 4, 2017, Plaintiff's Antivert prescription had been renewed by a different care provider. When Defendant examined Plaintiff for the final time on April 2, 2018, Plaintiff's Antivert prescription was still current. On April 9, 2018, Dr. Holmes denied Plaintiff's request to renew his Antivert prescription before it expired.

On summary judgment, the causation element is analyzed under the burden-shifting framework articulated in *Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977). *See Thomas v. Eby*, 481 F.3d 434, 441-42 (6th Cir. 2007). Plaintiff must first present evidence that his protected conduct was a motivating factor in the defendant's action." Even if Plaintiff makes this showing, Defendant is entitled to summary judgment if he demonstrates that he "would have taken the same action even without the protected activity." *Eby*, 481 F.3d at 441-42.

Plaintiff's claim fails both prongs of this analysis. As noted above, Plaintiff alleges that the two complaints he allegedly submitted to the warden motivated Defendant to retaliate against him. Plaintiff has failed, however, to present any evidence that Defendant was ever aware of these two complaints. In the absence of such evidence, Plaintiff cannot establish that his protected conduct motivated Defendant's allegedly retaliatory conduct. Moreover, even if Plaintiff could make such a showing, Defendant has demonstrated that his decision not to renew Plaintiff's Antivert prescription was based upon the exercise of his medical judgment and the results of his physical examinations of

Plaintiff. Accordingly, with respect to Plaintiff's retaliation claim, the undersigned recommends that Defendant Holmes is entitled to summary judgment.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendant's Motion for Summary Judgment, (ECF No. 22), be **granted** and this matter **terminated**. The undersigned further recommends that appeal of this matter would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

                    Respectfully submitted,

Dated: June 4, 2019                    /s/ Ellen S. Carmody
                                            ELLEN S. CARMODY
                                            U.S. Magistrate Judge